Syllabus.

# Staunton.

## American Mine Owners Mutual, Incorporated, v. Sam L. Matz Coal Corporation.

### September 23, 1926.

1. Workmen's Compensation Act—*Insurance Carriers—Dividends—Premiums—Agreement to Waive Dividends—Case at Bar.*—In the instant case, defendant, engaged in the business of writing workmen's compensation insurance, claimed that complainant, one of its customers, had agreed that in lieu of making a demand on defendant for a dividend for the year 1921, complainant would accept a refund equal to the difference in the premium according to the rate in force January 1, 1921, and the rate as promulgated by the Commissioner of Insurance, and made retroactive for the year 1921. Complainant contended that there was no such agreement and that it only agreed to waive payment of any dividend for the year 1921 on condition that the defendant would continue to do business in Virginia for the year of 1923, which defendant failed to do.

   *Held:* That the evidence supported complainant's contention and furthermore that the defendant was bound by the decision of the Commissioner of Insurance as to rates and could not demand of complainant a consideration for adjusting its premiums in accordance with his rulings.

2. Workmen's Compensation Act—*Insurance Carriers—Foreign Companies—Grouping Policyholders by States—Case at Bar.*—In the instant case, defendant, a Pennsylvania insurance carrier, claimed that under section 22101 of Pennsylvania statutes, it had a right to group its policyholders by States for dividend purposes. The act in question provided that "the board of directors might divide the subscribers into groups in accordance with the nature of their business and the probable risk of injury therein."

   *Held:* That there was nothing in the Statute which authorized defendant company to group its policyholders by States.

3. Workmen's Compensation Act—*Insurance Carriers—Foreign Companies—Conflict of Laws—Power to Fix Rates—Case at Bar.*—The Virginia workmen's compensation act, section 75(a) (Code of 1924, Sec. 1887 [75]), provides that rates of compensation shall not be valid until approved by the Commissioner of Insurance, therefore, in so far as a Pennsylvania statute is in conflict with the Virginai

law, it has no application to policyholders of a Pennsylvania corporation in Virginia.

4. WORKMEN'S COMPENSATION ACT—*Insurance Carriers—Foreign Companies—Dividends.*—Notwithstanding that in the instant case the record showed that defendant, a Pennsylvania insurance carrier, lost money in its Virginia business, its business as a whole was very profitable, and it had no right to refuse to pay to the Virginia policyholders the same dividend for 1921 that it paid to policyholders in other States.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Chester D. Fetterhoof* and *C. S. McNulty*, for the appellant.

*T. C. Bowen*, for the appellee.

WEST, J., delivered the opinion of the court.

Sam L. Matz Coal Corporation, chartered under the laws of the State of Virginia, is engaged in mining coal and manufacturing coke at its mine in Tazewell county, Virginia.

American Mine Owners Mutual, Incorporated, is a Pennsylvania corporation, engaged in the business of writing and carrying workmen's compensation insurance for coal operators. This company, which had theretofore been doing business in Pennsylvania, Maryland, Alabama and Kentucky, began to write business in Virginia in 1920.

Sam L. Matz Corporation will be referred to as complainant, and American Mine Owners Mutual, Incorporated, as defendant.

In 1919 the general manager and the treasurer of

the defendant visited the complainant and other coal operators in Virginia and represented to them that the defendant was a mutual company organized for the purpose of furnishing to coal operators compensation insurance at cost; that the net·profits would be returned to the policyholders in the shape of dividends, in proportion to the amount of premiums paid to them, respectively; and that it would be greatly to their interest to carry their workmen's compensation insurance with the defendant.

Accepting the statements and representations of its officers and agents as true, complainant secured a policy from the defendant, effective January 1, 1920, for the term of one year. On November 3, 1922, complainant also took out a compensation policy with the defendant in the name of the Sylvia Coal Company, which was owned and operated by complainant. Both policies were renewed and continued in force until May 31, 1923. On that day defendant cancelled all policies in Virginia and retired from business in this State.

According to reports of defendant to the Insurance Commissioner of Pennsylvania: The accrued surplus of the defendant for 1920 was $122,614.00; and for that year it paid to each policyholder a dividend of twenty per cent. of the amount of the premium charged; the profits for 1921, exclusive of accounts receivable thrown out by the Insurance Commissioner of Pennsylvania and a dividend, were $55,473.17; the profits for 1922, exclusive of the figures mentioned, were $124,372.51; the profits for 1923, exclusive of the figures mentioned for 1921 and 1922, were $32,332.95; for the four years there was an increase in surplus of $165,016.53.

The premiums paid by the complainant to defendant

or charged to complainant by defendant for the year 1920 were $1,063.65; for the year 1921, $3,898.54; for the year 1922, $4,385.36, and for the year 1923, $2,138.-09.

For the year 1921 neither the complainant nor any other policyholder in Virginia received any dividend from the defendant.

In 1922, the board of directors of defendant by resolution authorized the executive committee of the board to fix and declare the dividend for 1921 to be paid policyholders. The executive committee, on June 9, 1922, fixed and declared a dividend of fifteen per cent on premiums paid by each policyholder for the year 1921, except the members or policyholders in the State of Virginia, as to whom no dividend was fixed or declared.

The resolution of the board of directors so authorizing the executive committee reads as follows: "That the board of directors hereby directs and authorizes the executive committee to group by States for dividend paying purposes all members of the company."

No dividend was declared to any policyholder in any State for the years 1922 and 1923. In September, 1924, defendant recovered a judgment at law against complainant for $1,982.15 with interest from February 26, 1924, till paid, the same being the balance due on premium account.

Defendant also recovered a judgment against complainant for a balance of $127.92, with interest thereon from May 31, 1923, until paid, due on premium account on Sylvia Coal Company.

Fifteen per cent of the premium paid by the complainant for 1921 amounts to $584.78.

The bill in the instant case was filed by complainant, Sam L. Matz Coal Corporation, against defendant,

American Mine Owners Mutual, Incorporated, to enjoin and restrain defendant from collecting by execution, or otherwise, the two judgments aforesaid. A temporary injunction was awarded, and later, upon a final hearing, the court entered a decree adjudging that complainant recover of defendant $584.74, with interest from June 9, 1922, perpetuating the temporary injunction of January 6, 1925, as to that amount, directing that the same be credited upon the judgment aforesaid of defendant against complainant and Sylvia Coal Company and dissolving the injunction as to the balance then remaining due upon said judgments.

From that decree an appeal was allowed to this court.

The assignments of error are as follows:

"I. That the court erred in not holding the contract between complainant in error and defendant in error binding, by which contract the defendant in error agreed that, in lieu of making a demand for a dividend for the year 1921, whether earned or not, the defendant would accept a refund equal to the difference in premium according to the rate in force January 1, 1921, and the rate as promulgated by Commissioner Button, and made retroactive for the year 1921.

"II. That the court erred in holding that the American Mine Owners Mutual did not have the right to *group by States* for dividend paying purposes in accordance with section 22101 Pennsylvania statutes.

"III. That the pleadings in the court below showed conclusively that defendant in error does and did owe, when this suit was brought and when judgment was rendered by the court below, certain premiums which it had not paid, and that it made no offer to pay, and although appellant had given it credit on its account for the difference in the premium for the year 1921, which difference amounted to $422.69,

and which credit defendant in error admits in its brief, on page 14, to have been credited as of December 20, 1922."

*First Assignment.*

[1] It appears from the evidence that an application was made by the defendant to the Commissioner of Insurance to raise the rates defendant was then charging the coal operators in Virginia. During the time this matter was pending, defendant, thinking Commissioner Button would grant an increase in rates, agreed with the operators that the rate when fixed should be retroactive to January 1, 1921. It so happened that the Commissioner lowered the rates, whereby the policyholders who had paid their premiums according to the previous rates were entitled to a refund from the company from January 1, 1921. J. K. Taggart, one of the directors of the defendant, testified that "by agreement between Col. Button, the insurance carriers and the insured companies, the rate then promulgated was to be retroactive; and Col. Button lowered the rate. * * * * Under the decision of the Commissioner of Insurance lowering the rate there was a refund due each of the policyholders from January 1, 1921." This refund, amounting to $422.69, was not paid to Sam Matz Coal Corporation in cash but was credited to it on its premium account on which the judgment above referred to was obtained.

The contention of the defendant, American Mine Owners Mutual, is that the complainant, Sam L. Matz Coal Corporation, agreed to accept this refund in lieu of a dividend for 1921.

The complainant contends that there was no such

agreement; that the Virginia policyholders only agreed to waive payment of any dividend for the year 1921, *on condition* that the defendant insurance company would continue to do business in Virginia for the year 1923.

While there is some evidence tending to support the defendant's contention, we think the record sustains the contention of the complainant. J. K. Taggart, Virginia director for the defendant, on November 22, 1922, wrote C. M. Hanson, vice-president and general manager of the defendant that he had held a meeting of the Virginia policyholders at which it was in effect agreed that the policyholders would waive the fifteen per cent divided for 1921 and the defendant would renew the existing policies in the State for another year.

On December 18, 1922, Hanson wrote Taggart: "This is to formally advise you that instructions have been issued to the underwriting department to immediately send forth renewals on all Virginia policies * * * * ." The policies in favor of complainant were actually renewed in pursuance of the agreement but were cancelled by the defendant on the *31st* day of May, 1923.

Furthermore, the defendant was bound by the decision of the Commissioner of Insurance as to rates, and the defendant could not demand of the insured companies a consideration for adjusting their premiums in accordance with his rulings.

### Second Assignment.

Section 22101, Pennsylvania statutes, reads as follows:

"22101: Grouping subscribers: The board of directors may divide the subscribers into groups,

in accordance with the nature of their business and the probable risk of injury therein. In such cases they shall fix all premiums for each business in such group, and for the various classes of employments therein, in accordance with the probable risks of injury to the employees in such business and in each class of employment therein; and they shall make all assessments, and determine and pay all dividends, by and for each group in accordance with the experience thereof; but all funds of the association and the contingent liability of all the subscribers shall be available for the payment of any claim against the association: Provided, however, that (as between the association and its subscribers) until the whole of the contingent liability of the members of any group shall be exhausted, the general funds of the association and the contingent liability of the members of the other groups shall not be available for the payment of losses and expenses incurred by such group in excess of the earned premiums paid by the members thereof. (1915 June 2: P. L. 771-17.)"

[2] We find nothing in this statute which authorizes the defendant to group its policyholders by States. By its plain and unambiguous language the board of directors is only authorized to divide its subscribers into groups, "in accordance with the *nature of their business* and the probable *risk* of *injury therein.*" (Italics ours.)

The right to group their policyholders depends upon the nature of their business as well as the risk of injury therein, and not upon their territorial location. After the grouping has been done upon this basis, and not before, has the board of directors the power to "determine and pay dividends by and for each group in accordance with the experience thereof."

[3] Besides, in the Virginia workmen's compensation law, which is made a part of the policy contract, the board of directors has no authority to make valid rates. Section 75(a) of the Virginia act (Code of 1924, sec. 1887 [75]) provides: "No policy of insurance against liability for compensation under this act shall be valid until the rate thereof has been approved by the commissioner of insurance." In so far as the Pennsylvania statute, *supra*, is in conflict with the Virginia law it has no application to policyholders in Virginia.

[4] While the record shows that the defendant lost money in its Virginia business, its business as a whole was very profitable. Under the circumstances it had no right to refuse to pay to the Virginia policyholders the same dividend for 1921 that it paid to the stockholders in other States.

This assignment is without merit.

In view of the conclusions reached as to the first and second assignments of error, a discussion of the third would prove unprofitable.

As to the assignment of cross-error by the complainant, in which it is claimed that it is entitled to an additional credit of at least $822.58 on the defendant's judgment against it; we do not think the evidence sustains this contention.

While the evidence on material points is conflicting, we think there is ample evidence to sustain the conclusions reached by the lower court, and its decree will be affirmed.

*Affirmed.*